UNITED STATES *v.* THE AMERICAN BLUEFRIESVEEM, INC. (VAN HOUTEN Co.) (No. 3735)[1]

United States Court of Customs and Patent Appeals, April 30, 1934

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty,* special attorney, of counsel), for the United States.

*Barnes, Richardson & Halstead* (*Samuel M. Richardson* of counsel) for appellee.

[Oral argument April 11, 1934, by Mr. Lawrence and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges[2]

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in certain reappraisement proceedings, wherein the appellate (second) division of said court held the entered values of certain cocoa powder, involved in reappraisement 96469–A, were the dutiable foreign values thereof, and that the entered values of certain chocolate liquor invoiced in said reappraisement were the dutiable export values thereof.

---

[1] T. D. 47063.
[2] Hatfield, J., did not participate in this case.

Duress entries were later made covering other importations of like merchandise to meet the advances of the appraiser in said reappraisement 96469–A, and as to them the said court found that the unit invoice values, less freight Weesp–Rotterdam and statistic duties, were the correct dutiable values.

The merchandise involved consists of cocoa powder in bulk and in packages, and chocolate liquor, sometimes called chocolate mass, which merchandise was manufactured in Holland by C. J. Van Houten & Zoon, and exported by them to Van Houten Co., their sole representative and agent in the United States, and entered between August 27, 1929, and June 11, 1930.

It is established that all of the merchandise here involved was, in effect, consigned to appellee by the foreign exporter, said appellee being the exclusive agent in the United States of the foreign manufacturer and exporter, Van Houten & Zoon, and the stock of the appellee being controlled by said Van Houten & Zoon.

All of said merchandise was appraised by the local appraiser upon the basis of United States value under section 402 (d) of the Tariff Act of 1922.

It was stipulated that if the merchandise is dutiable upon the basis of United States value, the value found by the local appraiser was the correct United States value. It was further stipulated that the values found by the court below are correct if the chocolate liquor had an export value and the cocoa powder had a foreign value under the provisions of section 402, *supra*.

Section 402 (b) and (c), relating respectively to foreign and export value of imported merchandise, reads as follows:

SEC. 402 (b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(c) The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. If in the ordinary course of trade imported merchandise is shipped to the United States to an agent of the seller, or to the seller's branch house, pursuant to an order or an agreement to purchase (whether placed or entered into in the United States or in the foreign country), for delivery to the purchaser

in the United States, and if the title to such merchandise remains in the seller until such delivery, then such merchandise shall not be deemed to be freely offered for sale in the principal markets of the country from which exported for exportation to the United States, within the meaning of this subdivision.

With respect to the stipulation hereinbefore referred to, the record shows that counsel for the Government made the following statement as a part of the stipulation:

* * * I will say this, that if the court finds that they have proven commercial interchangeability of the Van Houten product with products sold by others in the foreign market, I will say that we are willing then to adopt the entered value, whatever it is.

The chocolate liquor or chocolate mass was packed in cases; each case contained 10 slabs, and each slab weighed 10 pounds. Upon each slab there was impressed the name "Van Houten", and each slab was wrapped in paper carrying the label "Van Houten."

The cocoa powder involved in this appeal was packed in two ways; the greater portion was in bulk in barrels, the average weight of each barrel being about 200 pounds. A minor portion was packed in containers in cases. The cocoa powder consisted of the following brands: Rona, Suma, New Dutch, Zoon, Delta, and Ora. Certain other brands were included in the importations and in the appeals to reappraisement, but on the trial before the single judge the appeal was abandoned as to such other brands, leaving only the brands above named involved in the reappraisement, so far as the cocoa powder is concerned.

Both parties agree that there was no foreign value of chocolate liquor. It is also conceded that chocolate liquor marked "Van Houten" was not freely offered for sale to all purchasers for export to the United States, and it is also conceded that the brands of Van Houten cocoa powder here involved were not freely offered for sale in Holland to all purchasers, either for export to the United States or otherwise.

It is claimed, however, by appellee, and this is the sole question in the case, that the evidence establishes an export value for chocolate liquor similar to the chocolate liquor here involved, and a foreign value for cocoa powder similar to the cocoa powder here involved, and that therefore, under the provisions of said section 402, *supra*, the merchandise here involved should be appraised at such values.

Upon this question the lower court in its decision said:

The proof in this case shows that Van Houten's cocoa powder was not sold for home consumption in Holland, nor was it sold or freely offered for sale to all purchasers for export to the United States. The proof further shows that no chocolate liquor is sold in Holland for home consumption by anyone. So the question at the present moment is: Was *similar* cocoa powder freely offered for sale in the usual wholesale quantities and in the ordinary course of trade, to all purchasers in the principal markets of Holland, at the time of the exportation of the instant merchandise? And also, was *similar* chocolate liquor, at the time of the instant exportation, freely offered for sale to all purchasers in the principal

markets of Holland, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States? The proof shows that Van Houten & Zoon have been selling to their agent in the United States same or similar powder and chocolate liquor for many, many years. Mr. L. C. Bowen, the gentleman who appraised the instant merchandise, testified to this effect and also to the effect that at or about the time of the entry of the instant merchandise, other manufacturers of cocoa powder and chocolate liquor were importing both into this country; that he appraised the cocoa powder of other manufacturers at foreign value, and the chocolate liquor at export value. Several witnesses testified that other manufacturers of cocoa powder in Holland, at and before the time of the instant importation, sold in the usual wholesale quantities and in the ordinary course of trade, cocoa powder which was similar and *commercially interchangeable* with the cocoa powder of Van Houten of the instant importation. They stated that the butter-fat content of cocoa powder is the determining element in proving the quality and similarity of same, and that the butter-fat content had to be guaranteed in all sales. Tests were also made to show the similarity of the cocoa powder manufactured and sold by others in Holland with the instant Van Houten cocoa powder. The proof also shows that at or about the time of the instant importation of the chocolate liquor, other manufacturers in Holland were manufacturing and selling chocolate liquor for exportation to the United States, which was similar to and commercially interchangeable with the chocolate liquor of Van Houten.

Whether the facts found by the court below, as above quoted, are in accord with the weight of the evidence is not for us to determine. If there is any substantial evidence to support its finding of foreign value of the cocoa powder and export value of the chocolate liquor here involved, based upon similarity of merchandise, we must affirm its judgment. This is so elementary that it needs no citation of authority.

By the stipulation of Government counsel that, if the evidence establishes commercial interchangeability of the Van Houten products with products sold by others in the foreign market, the entered values should be deemed to be correct, our review is narrowed to the question of whether there is substantial evidence to support the finding of the lower court that such commercial interchangeability had been established.

We do not here pass upon the question of whether commercial interchangeability is an indispensable element in determining similarity of merchandise under the provisions of section 402, *supra*. We are of the opinion, however, that there is substantial evidence in the record supporting the finding of the court below that the merchandise here involved was commercially interchangeable with chocolate liquor and cocoa powder sold by others in Holland, the latter having a foreign value and the former having an export value.

In the brief of the Government we find the following:

The record is clear that Van Houten's cocoa was not sold for home consumption in Holland, nor was it sold or freely offered for sale at wholesale to all purchasers for export to the United States, but was only sold to Van Houten's sole and exclusive agent in the United States (R., p. 116).

It would seem, therefore, that the court below had no competent legal basis or ground for finding and holding that the Van Houten (imported) cocoa was commercially interchangeable with other cocoas if the Van Houten cocoa was not sold in the home market (Holland), or was not freely offered for sale at wholesale for export to the United States. How can an article be commercially interchangeable when it cannot be purchased for consumption in the home market?

The foregoing quotation clearly demonstrates that commercial interchangeability of the imported merchandise with chocolate liquor and cocoa powder sold by others in Holland could not be established by proof of actual transactions of interchangeability. If that were required, there would seldom, if ever, be any occasion to resort to the market value of similar merchandise to determine the foreign or export value of imported merchandise, for, if the imported merchandise is freely sold in the country of exportation, there would be a foreign or export value of *such* merchandise, and resort to market value of similar merchandise would be unnecessary and, in fact, improper. *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714.

It would therefore seem that the determination of commercial interchangeability under section 402, *supra*, must be, ordinarily at least, by deduction from other facts, and that upon this question the opinions of witnesses who are familiar with the imported merchandise and merchandise claimed to be similar may be also considered.

There is substantial evidence in the record that the imported merchandise here involved is made of the same material, is made by the same processes, is adapted to the same uses as is chocolate liquor and cocoa powder manufactured and sold in Holland, and is so used. It further appears from the record that, in the opinion of witnesses familiar with the chocolate liquor and cocoa powder here involved, each is commercially interchangeable with chocolate liquor and cocoa powder sold by others in Holland, with which such witnesses are also familiar.

The Government official who appraised the merchandise in issue testified upon behalf of the appellee, and stated that the only reason that he appraised said merchandise at its United States value was because Van Houten products brought a higher price *in the United States* than chocolate liquor and cocoa powder exported to the United States from Holland by other manufacturers.

Of course, the determining factors of similarity of merchandise are the factors which existed in Holland and not those which may have existed in the United States. We are, therefore, not here called upon to determine whether the brands applied to the merchandise may be considered in determining its similarity to other merchandise.

We hold that there is substantial evidence in the record that the merchandise here involved is made of the same materials, made by the same processes, is commercially interchangeable with, is adapted

to the same uses as, and is used for the same purposes as, chocolate liquor and cocoa powder made and sold in Holland by others at the time of the exportation of the merchandise in issue. Therefore, there is substantial evidence in the record to support the finding of the court below that the merchandise so sold in Holland by others is similar to the merchandise here involved within the meaning of section 402, *supra*. *United States* v. *Thomas & Co.*, 21 C.C.P.A. (Customs) 254, T.D. 46788.

It follows, in view of the stipulation hereinbefore referred to, that the judgment of the United States Customs Court, Second Division, should be, and it is, *affirmed*.